UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


MATTHEW LEE FENNERN-CHANDLER,

        Plaintiff,

    v.

BRENDON BEDOLLA; DAVID PEDRO;
CPT. R. MILLER, PREA Compliance
Manager,

        Defendants.

Case No. 2:24-cv-02163-AP

**OPINION AND ORDER**

POTTER, Magistrate Judge.

Plaintiff, a self-represented adult in custody (AIC) with the Oregon Department of Corrections (ODOC), filed suit under 42 U.S.C. § 1983 alleging that Officer Bedolla violated his constitutional right to privacy during a search of AICs at Eastern Oregon Correctional Institution (EOCI).[1] Officer Bedolla now moves for summary judgment, and the parties have consented to

---

[1] The Court previously dismissed Plaintiff's claims against Defendants Pedro and Miller.

PAGE 1 – OPINION & ORDER

final disposition by the undersigned. For the reasons explained below, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment, and Officer Bedolla's motion is GRANTED.

## BACKGROUND

On August 27, 2024, Officer Bedolla assisted in conducting unclothed searches of AICs, including Plaintiff, at EOCI. Bedolla Decl. ¶ 3 (ECF No. 54). The searches were considered "routine," although officials were conducting searches more frequently after several AICs experienced drug overdoses. Miller Decl. ¶ 3 (ECF No. 56). Officers conducted the searches in the EOCI multipurpose room and barbershop, and Officer Bedolla conducted Plaintiff's search in the barbershop. *Id.*; Pl.'s Resp. to Mot. Summ. J. at 2 (ECF No. 58). At the time, Officer Bedolla had not worked at EOCI for a full year and was still in his trial service period. Bedolla Decl. ¶ 5.

Before he was searched, Plaintiff notified Officer Bedolla that the barbershop had a security camera. *Id.* ¶ 4; Pl.'s Resp. to Mot. Summ. J. at 4. Officer Bedolla states that he did not know whether the camera was operating at the time and consulted a senior staff member, who informed him that the searches in the barbershop could continue. Bedolla Decl. ¶ 6. Plaintiff contends that Officer Bedolla threatened Plaintiff with disciplinary sanctions if he did not submit to the search. Pl.'s Sur-Reply at 2 (ECF No. 65).

On August 27, 2024, Sgt. Reddick, a female correctional officer, was working in the EOCI control tower. Reddick Decl. ¶ 3 (ECF No. 55). Sgt. Reddick and her team were unaware that a "mass" unclothed search was taking place and she did not learn about the searches until later that day. *Id.* The control tower monitors typically view scenes from camera feeds in high traffic areas and are not switched to the camera feeds in the multipurpose room or barbershop area absent a specific reason. *Id.* ¶ 4. Sgt. Reddick asserts that on August 27, 2024, the control

PAGE 2 – OPINION & ORDER

tower monitors were not switched to camera feeds in the multipurpose room or barbershop and she did not view undressed AICs on that date.

Afterward, Officer Bedolla learned that unclothed searches of AICs should not be conducted in front of operational security cameras, if possible, and he has not conducted additional unclothed searches in areas with operational security cameras. Bedolla Decl. ¶ 6.

Plaintiff filed a grievance at EOCI and complained about being searched in view of a security camera. *See* Attachments to Pl.'s Resp. to Mot. Summ. J. (ECF No. 58 at 9, 19). In response, Plaintiff was informed that Officer Bedolla was reprimanded and given additional training on unclothed searches. Am. Compl. at 8 (ECF No. 9).

On December 30, 2024, Plaintiff filed this action. Plaintiff alleges that Officer Bedolla violated his right to bodily privacy by subjecting him to an unclothed search in front of other AICs and in potential view of Sgt. Reddick via the security camera. *See Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1160 (9th Cir. 2020) (stating that the "right to bodily privacy" extends to prison inmates). Officer Bedolla moves for summary judgment on grounds that the search of Plaintiff was reasonable and he is entitled to qualified immunity.

### LEGAL STANDARD

Summary judgment is warranted when, based on the pleadings, depositions, and other interrogatories and admissions on file, together with the affidavits, if any, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case; disputes about irrelevant or unnecessary facts do not preclude summary judgment. *Id.* And the materiality of the

fact is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Whether there is a genuine issue of material fact is often a close question. *Id.* Thus, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Ser.*, Inc., 809 F.2d at 630 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot merely rely on allegations in the pleadings or claims that it will discredit the moving party's evidence at trial. *Id.* But neither party need prove any fact conclusively at this stage. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party and when evidence conflicts, the court "must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.* at 631. At bottom, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *Id.*

Because Plaintiff is self-represented, the Court construes his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015). However, Plaintiff is not relieved of the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. 10-cv-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

## DISCUSSION

Plaintiff argues that Officer Bedolla violated his constitutional rights to privacy by conducting an unclothed search in an area that had an uncovered window and a security camera. Am. Compl. at 5. Plaintiff contends that other AICs and Sgt. Reddick could see his unclothed body through the barbershop window and the security camera, and he seeks compensatory

PAGE 4 – OPINION & ORDER

damages and injunctive relief. Officer Bedolla moves for summary judgment on grounds that the search of Plaintiff served a reasonable penological interest and was not excessive or harassing so it did not violate his constitutional rights. Alternatively, Officer Bedolla maintains that he is entitled to qualified immunity.

The Fourth Amendment right to be secure against unreasonable searches "extends to incarcerated prisoners," and AICs retain a "limited right to bodily privacy" in "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex." *Michenfelder v. Sumner*, 860 F.2d 328, 332, 333 (9th Cir. 1988); *see also Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (recognizing "that the Fourth Amendment does apply to the invasion of bodily privacy in prisons."). However, "the reasonableness of a particular search is determined by reference to the prison context," and routine pat-down searches and random visual strip searches of AICs generally do not violate the Fourth Amendment. *Michenfelder*, 860 F.2d at 332-334; *see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington* , 566 U.S. 318, 338-39 (2012) (upholding routine, unclothed searches of detainees entering jails); *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979) (finding body-cavity searches conducted after contact visits to be reasonable under the Fourth Amendment); *Thompson v. Souza*, 111 F.3d 694, 699-701 (9th Cir. 1997) (upholding visual strip searches conducted in view of other AICs as reasonably related to legitimate penological interests). Only when an unclothed search is "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" does it rise to the level of a constitutional deprivation. *Michenfelder*, 860 F.2d at 332; *see also Bell*, 441 U.S. at 560. To determine the reasonableness of a search, courts consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

PAGE 5 – OPINION & ORDER

Here, Officer Bedolla conducted a routine, unclothed visual search for the purpose of detecting contraband, which is recognized and accepted as a legitimate penological objective. *Florence*, 566 U.S. at 328, 332-33; *Bell*, 441 U.S. at 559; *see also Hudson v. Palmer*, 468 U.S. 517, 529 (1984) (finding that "wholly random searches are essential to the effective security of penal institutions"). Further, Plaintiff presents no evidence suggesting that the search was vindictive or harassing, or that Officer Bedolla targeted Plaintiff for humiliation or embarrassment. Instead, Plaintiff argues that the location of his search rendered it unreasonable, because it was conducted in a room with an uncovered window and a security camera, potentially in view of other AICs and correctional officers viewing the camera feed, including Sgt. Reddick. Plaintiff contends that he is constitutionally entitled to have unclothed searches conducted in "private" locations.

However, the cases cited by Plaintiff to support his argument involved invasive and gratuitous cavity searches that are inapposite to the facts of this case. *See Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (finding post-arrest strip searches of arrestees by police officers unreasonable where "[e]ach Plaintiff was forced to disrobe, ridiculed, and penetrated by an object in front of the other"); *Vaughan v. Ricketts*, 859 F.2d 736, 738 (9th Cir. 1988) (affirming the denial of qualified immunity where "correctional medical assistants untrained in involuntary rectal cavity searches conducted them on a table in an open hallway, within view of prison personnel and some inmates" and in "unsanitary" conditions). Plaintiff does not allege that his unclothed searched involved offensive or invasive touching or that female officers unnecessarily participated the searches. *Cf. Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc) (finding that a cross-gender search that involved touching an AIC's genitalia and searching inside his anus "was unreasonable as a matter of law").

In *Michenfelder*, the Ninth Circuit addressed the unconstitutionality of unclothed searches occurring under circumstances similar to those alleged by Plaintiff. There, visual body cavity searches, without touching, were conducted in a hallway. 860 F.2d at 330. The searches were visible to some other prisoners whose cells opened into the hallway and by persons monitoring video screens in the "control bubble," including by female officers who worked in the control bubble and other areas. *Id.* But, as here, female officers did not conduct the searches except in emergencies. *Id.* The Ninth Circuit found that the manner in which the searches were conducted, which included the infrequent or distant presence of female officers, "was reasonably related to legitimate penological interests." *Id.* at 333-34. The court concluded that "routine strip search procedures…, even when conducted outside the inmates' cells by officers carrying taser guns and where female employees might occasionally view them" did not violate the Fourth or Eighth Amendments. *Id.* at 338. The circumstances of this case do not differ significantly from those in *Michenfelder*, and the Ninth Circuit has repeatedly affirmed that holding. *See, e.g., Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017) (discussing the holding of *Michenfelder* with approval).

Moreover, Plaintiff presents no evidence that Sgt. Reddick actually observed the unclothed searches via the security camera. Even if she did, caselaw of this Circuit holds that the United States Constitution is not violated when the observation of an AIC's unclothed body during a search—even by officials of a different gender—is "infrequent and casual, or from a distance" and the search otherwise served "legitimate penological interests." *Michenfelder*, 860 F.2d at 334 (discussing cases); *Dillon v. Clackamas Cnty.*, No. 20-35544, 2022 WL 1285042, at *2 (9th Cir. Apr. 29, 2022) (rejecting claim that unclothed searches were unreasonable "because they could be observed by female deputies who monitor the jail's closed-circuit" system and

PAGE 7 – OPINION & ORDER

explaining that "case law makes clear that the mere possibility that a strip search of male inmates could be observed by female deputies, without more, is not enough to establish a Fourth Amendment violation").

In sum, Plaintiff has failed to show a violation of his constitutional rights arising from his unclothed search by Officer Bedolla; this precludes his claims. But even if Plaintiff had shown such a violation, Officer Bedolla would be entitled to qualified immunity. Qualified immunity applies when an officer's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). What the *Michenfelder* decision makes clear is that the reasonableness of a strip search turns on the circumstances. It is clear that given the circumstances in this case, no reasonable officer would have understood that the search violated clearly established law. *See Pearson*, 555 U.S. at 243-44; *see also Reagan v. EOCI (DOC)*, No. 2:19-cv-01705-MC, 2021 U.S. Dist. LEXIS 45894, at *7-8, 2021 WL 933849 (D. Or. Mar. 11, 2021). Summary judgment for Officer Bedolla is appropriate.

## CONCLUSION

Officer Bedolla's Motion for Summary Judgment (ECF No. 52) is GRANTED and this action is DISMISSED. Any appeal from this Order or Judgment dismissing this action would be frivolous or not taken in good faith, and Plaintiff's IFP status is HEREBY REVOKED.

IT IS SO ORDERED.

DATED this 29th day of June, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

PAGE 8 – OPINION & ORDER